Eric S. Rossman, ISB #4573
erossman@rossmanlaw.com
Erica S. Phillips, ISB #6009
ephillips@rossmanlaw.com
Chad M. Nicholson, ISB #7506
cnicholson@rossmanlaw.com
ROSSMAN LAW GROUP, PLLC
737 N. 7th Street
Boise, Idaho 83702
Telephone: (208) 331-2030
Facsimile: (208) 342-2170

James S. Notis (*Pro Hac Vice Pending*)
jnotis@gardylaw.com
Jennifer Sarnelli
jsarnelli@gardylaw.com
GARDY & NOTIS, LLP
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Telephone: (201) 567-7377
Facsimile: (201) 567-7337

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GLENDA HESLEY, Derivatively on Behalf of HECLA MINING COMPANY, <br><br> Plaintiff, <br><br> -v- <br><br> PHILLIPS S. BAKER, JR., TED CRUMLEY, JOHN H. BOWLES, GEORGE R. NETHERCUTT, JR., TERRY V. ROGERS, CHARLES B. STANLEY and | **CASE NO. _____** <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> Filing Fee: $350.00 |

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

ANTHONY P. TAYLOR,                      )
                                        )
                 Defendants,            )
       -and-                            )
                                        )
HECLA MINING COMPANY, a Delaware        )
Corporation,                            )
                                        )
          Nominal Defendant.            )
                                        )

## SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Glenda Hesley ("Plaintiff") brings this action derivatively on behalf of nominal defendant, Hecla Mining Company ("Hecla" or the "Company"), and alleges upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is a shareholder derivative action, brought by a shareholder of Hecla, on behalf of the Company against certain of its officers and directors seeking to remedy defendants' breaches of fiduciary duties that occurred between October 26, 2010 and the present (the "Relevant Period") and that have caused substantial losses to Hecla and other damages, such as to its reputation and goodwill.

2.     Hecla it a leading producer of precious metals such as silver, gold, lead and zinc. Hecla produces silver from two mines, Greens Creek and Lucky Friday. In 2010, the Greens Creek mine in Alaska, produced 7.2 million ounces of silver and the Lucky Friday mine in northern Idaho produced 3.4 million ounces.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 2**

3.      Hecla prides itself on its ability to mine silver cheaply boasting on its Company Web site that in 2010 "Hecla produced 10.6 million ounces of silver at a total cash cost of negative $1.46 per ounce." However, the ability to cheaply produce silver stems from the board of director's blatant disregard for the safety of its miners.

4.      Hecla's management and directors have shown a habitual disregard for mine safety regulations – ignoring life threatening safety violations until forced by the Mine Safety and Health Administration to make repairs.

5.      In April 2011, a miner was killed when his work area collapsed in the Lucky Friday mine. Then, in November 2011, in a second incident, a miner was killed while working in the Lucky Friday mine after he was buried in rubble while trying to dislodge jammed rock.  Finally, in December 2011, in a separate, unrelated accident, seven miners were injured when a rock burst in the Lucky Friday mine.  Following the December incident, the Company suspended operations at the Lucky Friday mine, announcing that mining operations at the mine would resume in February 2012.

6.      Based upon these series of accidents, federal mining regulators engaged in a close inspection of the Lucky Friday mine.  In early December, the Mine Safety and Health Administration ("MSHA") issued an accident report, accusing Hecla of safety failures that led to the death of the miner in the April incident.  In conjunction with the report, the Company received four citations and faced a nearly $1 million fine.  Thereafter, on January 5, 2012, MSHA issued a closure order for the Lucky Friday mine for the removal of built-up material in the shaft.  Federal inspectors determined that sand and concrete material had been leaking from a pipe into the shaft for a number of years. The sand and concrete material created a safety hazard because it could break off and fall down the shaft, injuring people or damaging the elevators.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

7.      On January 11, 2012, Hecla announced that the Lucky Friday mine would be closed for up to a year based upon MSHA's order, as the Company would be required to engage in an extensive clean-up of the mine in order to meet safety regulations. As a result of the closure, Hecla reduced its estimated silver production for 2012 from more than 9 million ounces to around 7 million ounces.

8.      Now Hecla faces significant fines resulting from violations of laws and regulations concerning mine health and safety, costs to defend against personal injury lawsuits arising from the deaths and injuries in the unsafe Lucky Friday mine, increased costs related to internal and external investigations into the Lucky Friday mine safety violation and loss of revenue due to reduced operations.

9.      As discussed in greater detail herein, not only has defendants' gross mismanagement resulted in great tragedy for its employees, but it has also had a direct and negative impact on Hecla's financial position and profitability and has severely and irreparably damaged the Company's reputation and credibility in the world marketplace.

## JURISDICTION AND VENUE

10.     This shareholder derivative action is brought pursuant to Fed. R. Civ. P. 23.1.

11.     Hecla is a Delaware corporation with its headquarters in Coeur d'Alene, Idaho. Plaintiff is a resident of Florida. The defendants are residents of states other than Florida.

12.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This action is not brought collusively to confer jurisdiction on this Court which it would not otherwise have. Hecla is headquartered in this Judicial District, and the Company and the

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

defendants are subject to personal jurisdiction in this Judicial District. Venue is proper here because the claims herein arose from events, actions and failures to act which occurred in this Judicial District.

## THE PARTIES

14.     Plaintiff is currently a shareholder of Hecla and has continuously been a shareholder of the Company since May 30, 2011. Plaintiff is a resident of Pampa, Texas.

15.     Nominal Defendant Hecla is a Delaware corporation and maintains its headquarters and principal executive offices in Coeur d'Alene, Idaho. Hecla is precious metal mining company and the largest primary silver producer in the United States. Hecla produces silver from two mines: Greens Creek in Alaska and Lucky Friday in Idaho. Hecla s listed and traded on the New York Stock Exchange under the symbol "HL."

16.     Defendant Phillips S. Baker, Jr. ("Baker") has been a Hecla director since 2001, Chief Executive Officer since May 2003, and President since November 2001. Baker served as the Company's Chief Financial Officer from May 2001 to June 2003, Chief Operating Officer from November 2001 to May 2003, and Vice President from May 2001 to November 2001. Baker is presently the chairman of the Executive Committee.

17.     Defendant Ted Crumley ("Crumley") has been a Hecla director since and Chairman of the Board since 1995. Crumley has 30 years of experience in management, finance and accounting in the natural resources industry. Crumley presently serves on the Compensation and Executive Committees.

18.     Defendant John H. Bowles ("Bowles") has been a Hecla director since 2006. Bowles is a chartered accountant and prior to his retirement specialized in the audits of public companies in

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

the mining industry.  Bowles is presently the chairman of the Audit Committee and member of the Executive, and Health Safety, Environment & Technical ("Safety") Committees.

19.     Defendant George R. Nethercutt, Jr. ("Nethercutt") has been a Hecla director since 2005. Nethercutt has an extensive political background, including serving a Republican member of the United States House of Representatives from 1995 to 2005, representing Washington's 5th congressional district.  Nethercutt is presently the chairman of the Compensation Committee, and member of the Corporate Governance/Directors Nominating Committees.

20.     Defendant Terry V. Rogers ("Rogers") has been a Hecla director since 2007.  Rogers has over 30 years experience in the mining industry where he held several executive positions with major mining companies and their subsidiaries worldwide.  Rogers is presently the chairman of the Safety Committee, and member of the Audit and Compensation Committees.

21.     Defendant Charles B. Stanley ("Stanley") has been a Hecla director since 2007. Stanley has over 27 years experience in the international and domestic upstream and midstream oil and gas industry.  Stanley is a member of the Audit, Corporate Governance/Directors Nominating and Safety Committees.

22.     Defendant Anthony P. Taylor ("Taylor") has been a Hecla director since 2002.  Taylor has over 46 years experience in the mining industry in all levels of exploration from a field geologist to senior management.   Taylor is presently chairman of the Corporate Governance/Directors Nominating and member of the Compensation and Safety Committees.

23.     Defendants Baker, Crumley, Bowles, Nethercutt, Rogers, Stanley, and Taylor are herein referred to as the "Individual Defendants."

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

## DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of their positions as officers and/or directors of Hecla and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed to Hecla and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Hecla in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Hecla and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Hecla, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

25.     To discharge their fiduciary duties, the officers and directors of Hecla were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Hecla were required to, among other things:

(a)     Manage, conduct, supervise and direct the business affairs of Hecla in accordance with all applicable laws, including federal and states laws, regulations and policies of the Company;

(b)     Neither violate, nor permit any officer, director or employee of Hecla to violate applicable laws, rules and regulations;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

(c)     Remain informed as to the status of Hecla's operations, including its practices in relation to employee safety, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices; and

(d)     Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock.

26.     Hecla and its shareholders depend and rely on Board members to carry out their fiduciary duties. Hecla Web site details the Company's commitment to "prioritizing the health and safety of our employees:"

> Hecla's greatest resource is its people; their health and safety is our top priority. Without our dedicated and talented workforce, we would not be as successful as we are today. Management is responsible for ensuring a safe workplace by minimizing hazards and providing training and safe equipment. Each property has its own challenges and methods, but all have the same goal: to send employees and contractors home to their families safe and sound – every day.

27.     As described herein, the Hecla Board has failed to meet this commitment and has consciously chosen to disregard safety at the Company's facilities.

28.     Defendants Bowles, Rogers, Stanley and Taylor are members of the Board's Safety Committee. As members of the Safety Committee, these defendants have enhanced duties as outlined on the Company's Web site, to review and make recommendations related to safety issues regarding Company policies, practices and programs. As such, they are directly responsible for overseeing Hecla's compliance with applicable safety laws, and were and are aware of Hecla's ongoing safety violations and have failed to prevent them, rendering them incapable of impartially

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

investigating or taking appropriate action against themselves and others responsible for the wrongdoing alleged herein.

29.     The Safety Committee Charter specifies that the "duties and responsibilities" of the Safety Committee, and the Company directors who sit on that committee, are as follows:

(a)     Review health, safety and environmental policies;

(b)     Discuss annually with management, the scope and plans for conducting audits of the Company's and its subsidiaries' performance in health, safety and the environment;

(c)     Review and discuss with management, any material noncompliance with health, safety or environmental laws, and management's response to such noncompliance;

(d)     Review and discuss with management, any pending or threatened administrative, regulatory, or judicial proceedings regarding health, safety or the environment that are material to the Company;

(e)     Insure that management monitors significant trends in health, safety and environmental legislation;

(f)     Receive and review updates from management regarding health, safety and environmental performance of the Company and its subsidiaries;

(g)     Reviewing data and making recommendations to the Board concerning the advisability of proceeding with the exploration, development, acquisition or divestiture of mineral properties and/or operations; and

(h)     Perform such other duties and responsibilities, consistent with this Charter and governing laws, as may be delegated to the Committee from time to time from the Board.

30.     In violation of their fiduciary duties, the Individual Defendants permitted and/or caused Hecla to repeatedly violate applicable safety laws and regulations thereby putting lives at risk and causing the Company to incur fines and penalties and lose profits as a result of closing the Lucky Friday mine.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

31.     The Individual Defendants, because of their positions of control and authority as directors of the Company, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.

## SUBSTANTIVE ALLEGATIONS

32.     On October 25, 2010, Hecla issued a press release announcing an update to the Lucky Friday #4 Shaft Project at the Company's Lucky Friday mine.  The Company reported that the mine could increase its annual silver production by approximately 50% from its current levels and extend the mine life beyond 2030.   The release stated that the project would increase annual silver production at Lucky Friday from current levels of approximately 3 million ounces to 5 million ounces.

33.     Throughout the Relevant Period the Company continued to issue quarterly and annual earnings reports wherein reaffirmed that the Lucky Friday mine development was anticipated to significantly grow the Company's revenue over the next 5-years.

34.     However, the Individual Defendants chose to ignore blatant safety violations in the Lucky Friday mine in order to try and achieve greater profits at the expense of its miners.  Further, the Individual Defendant's disregard for mine safety exposed the Company to potential personal injury liability, safety violation fines and closings of its only United States silver mining facility.

35.     On April 18, 2011, Hecla issued a press release reporting that an employee was unaccounted for at the Lucky Friday mine.  The release stated in part:

> Hecla Mining Company ("Hecla") (NYSE:HL) provides an update on the localized fall of ground in a stope which occurred at its Lucky Friday mine in Northern Idaho on April 15, 2011.  An employee is unaccounted for.

"Our current focus is 100% directed to rescuing the miner and ensuring the safety of the rescue team," said Phil Baker, President and Chief Executive Officer. "Larry Marek is an experienced miner and has been with Hecla for 12 years. We deeply sympathize with the family, employees and overall situation and are doing all that is possible to progress with rescue operations in a safe and expedited manner. Our thoughts and prayers are with the family and loved ones."

The Lucky Friday mine has ceased mining to focus on rescue operations. Hecla does not know how long the rescue efforts will continue or if it will impact the 2011 production guidance.

Hecla is working extraordinarily hard to reach the employee and will continue making every effort as long as it takes, using safe methods in the process to ensure the safety of our rescue teams. Rescue teams are working 24 hours a day in two twelve-hour shifts.

Communications are being coordinated with all relevant authorities, including local, state, regional and federal officials and emergency service organizations. MSHA is on site.

36.    Following this accident MHSA issued a formal report concluding:

The accident occurred because management did not have policies and procedures that provided for the safe mining of split stopes in a multi-vein deposit. Management failed to design, install, and maintain a support system to control the ground in places where miners worked and traveled. Additionally, management failed to ensure that appropriate supervisors or other designated persons examined or tested the ground conditions where the fall occurred.

37.    Despite MHSA'a assessment, the Individual Defendants failed to take the steps necessary to remedy the safety issues at the Lucky Friday mine.

38.    On May 9, 2011, Hecla issued a press release announcing its first quarter 2011 financial results. Therein, Hecla announced that there was a fatal accident at Lucky Friday on April 15, 2011. The Company announced that this accident would not impact its financial guidance. Rather the announcement reaffirmed that Lucky Friday was positioned to significantly grow production over the next five years.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**

39.     On November 17, 2011, Baker appeared on *Fox Business* to underscore the Company's recent robust performance amongst strong demand for silver silver, stating, "silver is a metal that is going to follow gold…those underlying supply and demand fundamentals are the best they have been…really in the history of mankind…."  Baker also stated that the main money driver for the Company was its low production cost.     (available at http://video.foxbusiness.com/v/1281658180001/hecla-mining-co-ceo-on-strong-demand-for-silver/?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+foxbusiness%2Fleaders+%28Internal+-+Business+Leaders+-+Text%29).

40.     The following day, Hecla issued a press release reporting yet another accident at the Lucky Friday mine.  The release stated in part:

> The accident occurred as part of the construction of the #4 Shaft at the Lucky Friday operation.  Two contractors were involved in the accident during routine activities involving the construction of a 16-foot diameter underground rock bin (a storage area for broken rock).  The work involved drilling, blasting, and mucking of rock into a previously constructed area.  Both men were believed to be wearing all required personal protection equipment, including fall protection.  For reasons that are unknown at this time, the two men were drawn into material that was moving underneath them.  Both contractors were removed from the area and transported to the hospital, and one has been released.  All personnel are accounted for.

> "Our thoughts and prayers are with the family and for a safe recovery of the injured contractor," said Phil Baker, President and Chief Executive Officer. "Operating our mines safely is a top priority for Hecla, and we will continue to work to prevent such incidents from occurring."

> The accident is being investigated by the Company and representatives from the federal Mine Safety and Health Administration.  The workers' families have been notified. The Lucky Friday mine has temporarily ceased mining to investigate this accident.

41.     On November 19, 2011, Hecla issued an updated press release regarding the Lucky Friday mine accident on November 18, 2011, which stated in part:

**COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

Hecla Mining Company ("Hecla") is saddened by the news that Brandon Lloyd Gray, the 26-year-old miner critically injured at its Lucky Friday mine in North Idaho on November 17, succumbed to his injuries early Saturday morning with his family at his side. Gray, a miner since 2008, had been working for Cementation Inc. since February 2011, a company that is under contract for the construction of the mine's #4 Shaft.

"We are deeply saddened by Brandon's passing," said Phil Baker, President and Chief Executive Officer. "Everyone at Hecla extends our sincere condolences to his family and loved ones."

Mike Nadon, President of Cementation U.S.A. said, "The whole Cementation family is grieving this terrible loss, and our immediate focus is in supporting Brandon's family with our assistance and our prayers."

Immediately following the accident, Hecla chose to cease mining operations at the Lucky Friday mine in order to focus our attention on the emergency response and to provide support to the affected employees and families of both Hecla and Cementation. The federal Mine Safety and Health Administration ("MSHA") subsequently issued a 103(j) order. An integrated team of Hecla and Cementation as well as representatives from MSHA are investigating the accident, which is unrelated to the fall of ground accident that occurred on April 15, 2011. A start-up date for resuming operations has not yet been established.

"Hecla is committed to preventing such accidents from happening," added Phil Baker, President and Chief Executive Officer. "We will continue to emphasize safety throughout all of our properties."

42.     Despite these fatal accidents, the Individual Directors did nothing to improve the

safety of the Lucky Friday mine and instead on November 21, 2011 the Company issued a press

release focusing on profits, stating in part:

Hecla Mining Company ("Hecla") reports that the suspension of operation on November 18 at its Lucky Friday mine is not expected to impact the 2011 silver production guidance of 9 to 10 million ounces and cash cost of approximately $1.00 per ounce, net of by-products.

43.     On December 2, 2011, Hecla issued a press release entitled which stated in part:

Hecla Mining Company ("Hecla") received the Report of Investigation ("Report") from the United States Department of Labor Mine Safety and Health Administration ("MSHA") relating to the April 15, 2011 fatal accident at the Lucky Friday mine in

**COMPLAINT AND DEMAND FOR JURY TRIAL - 13**

Mullan, Idaho.

Prior to the fall of ground in April, Hecla's safety record at the Lucky Friday mine was excellent. Hecla employees, past and present, worked for more than 25 years, and 8.5 million man-hours without a fatality. During that same time period, the Company continued to make strides in accident reduction.

"Our Company works hard each day to have our miners return home safely to their families at the end of their shift. This has been a gut-wrenching time for our Company and for our communities," said Phil Baker, President and Chief Executive Officer. "In my opinion and upon examination, the Report does not substantiate MSHA's previously issued citations."

Hecla has already worked with MSHA to address issues outlined in the Report which resulted in the re-opening of the mine and continued operations. However, Hecla is contesting the citations referenced in the Report. For example, contrary to MSHA's claims, the work was being conducted in accordance with Hecla's ground control plan. Hecla understands MSHA is planning on posting the Report on its website in the near future.

44.     On December 15, 2011, Hecla issued a press release regarding a rock burst that had

occurred in the Lucky Friday mine, which stated in part:

Hecla Mining Company ("Hecla") reports that all miners have been safely removed from the Lucky Friday mine near Mullan, Idaho, following a rock burst that occurred Wednesday, December 14, at approximately 7:40 p.m.

"We are thankful that all employees are out of the mine and have been accounted for, and that those injured have been treated. The safety of our employees is our primary concern," said Phil Baker, President and Chief Executive Officer. "The mine is currently shut down, and once we have cared for our people, we will be investigating the cause of the seismic activity."

The incident occurred at 5900 feet below the surface. Seven people were transported to local hospitals and treated for non-life-threatening injuries. No mine blasting had taken place anywhere in the mine for the previous 24 hours; therefore, the rock burst is unrelated to mining activities. The mine is currently closed pending further investigation. The federal Mine Safety and Health Administration has been notified and investigators are en route to the mine.

45.     Subsequently, on December 16, 2011, the Company issued a press release which

stated in part:

COMPLAINT AND DEMAND FOR JURY TRIAL - 14

Hecla Mining Company ("Hecla") is reporting that the rock burst that injured seven miners Wednesday night at the Lucky Friday mine near Mullan, Idaho, is unrelated to two previous fatal accidents which occurred earlier in the year. In addition, all seven Hecla miners are expected to fully recover from their non-life-threatening injuries. Most of the miners were treated and released by area hospitals, with the most serious injuries involving lacerations, a broken arm and a broken pelvis.  There were 25 Hecla employees and 18 contractor employees underground in the mine at the time of the rock burst.  All were immediately evacuated, and most were not in the vicinity of the affected area.

"Thankfully, our miners were not more seriously injured and all seven are expected to fully recover," said Phil Baker, President and Chief Executive Officer for Hecla. "There's no connection to the previous fatal events.  Our peoples' safety is very important to us, and we are working hard to get the mine back on track to its longstanding safety record prior to this year, characterized by more than 25 years and 8.5 million man-hours without a fatality."

On November 16, 2011, shortly after 1 a.m., Hecla reported a seismic event that caused a rock burst in approximately the same location as this most recent incident at 5900 feet below surface, in the area of the pillar that crosses through the 30 vein. This rock burst was triggered by mine blasting at the end of a shift. As a result, no one was in the area at the time of the incident and no injuries were reported.

The most recent incident also occurred at 5900 feet below the surface. Rock failures around a mining excavation can be triggered by natural occurrences or by mine blasting. Baker said Hecla was in the process of installing designed tunnel supports, which consist of a steel liner and other materials such as shotcrete, in that particular area.  This method is very similar to that used in road construction in underground tunnels which is meant to provide a support canopy for the roadway.

"Both rock bursts occurred approximately in the same location; however, this most recent event was not triggered by mine blasting, since blasting had not taken place within the previous 24 hours.  Consequently, we need more information about what triggered this rock burst," Baker said.  "The mine is currently shut down to give us time to examine this in conjunction with federal Mine Safety and Health Administration representatives."

46.    On December 21, 2011, Hecla issued a press release which stated in part:

Hecla Mining Company ("Hecla") reports that in order to ensure safe and efficient operations for its personnel, Hecla will develop a new haulage way to bypass the rock burst that occurred at the Lucky Friday mine near Mullan, Idaho, on December 14. Creating the bypass and reestablishing mine production is expected to be complete by the end of February 2012.

COMPLAINT AND DEMAND FOR JURY TRIAL - 15

Hecla's silver output remains within its previous estimates with 2011 production expected at more than 9 million ounces and cash cost estimates remaining unchanged at approximately $1.00 per ounce, net of by-products. For 2012, Hecla expects to increase silver production to more than 9.5 million ounces including the loss of two months of production at the Lucky Friday mine while the bypass is completed.

Phil Baker, Hecla's President and Chief Executive Officer said: "While 2011 has been a difficult year for Hecla and the Lucky Friday, the previous 25 years at the Lucky Friday have been characterized by an extraordinary safety record. Looking forward, our goal, which we will relentlessly pursue, is to reestablish the same safety and operating performance decades into the future. I am happy to report that everyone who was injured on December 14 has been released from the hospital and is on the road to recovery."

Hecla will not repair the area where the rock burst occurred. Instead, Hecla is planning a 750-foot bypass creating a new haulage way, which will be a significant distance from where the rock burst occurred and in a previously mined area reducing the risk of future rock bursts.

Hecla expects that a majority of Lucky Friday employees will stay at the mine to work on the bypass or other Lucky Friday projects. Any remaining qualified employees will be given the opportunity to work at Hecla's other properties.

Hecla closed the mine when the accident occurred on December 14 to ensure employee safety, investigate the accident, and evaluate alternative plans. Subsequently, the federal Mine Safety and Health Administration ("MSHA") issued an order closing the mine. Hecla is working with MSHA to finalize the investigation and lift the closure order to start the development of the new haulage way, resume construction of the #4 Shaft, and work on other maintenance projects.

47.    Then, on January 11, 2012, Hecla issued a press release which stated in part:

Hecla Mining Company ("Hecla") reports that the Mine Safety and Health Administration ("MSHA") has ordered the Silver Shaft at the Lucky Friday mine in Mullan, Idaho closed for removal of built-up material in the shaft. This order is pursuant to the investigation following the December 14, 2011 rock burst.

Compliance with the order is expected to take through year-end. Hecla's 2012 silver production is now estimated to be approximately 7 million ounces.

"While we are disappointed with this order and are considering what action we might take, work has already begun to resume production as quickly as possible," said Phil Baker, Hecla's President and Chief Executive Officer. "The Lucky Friday mine is a world-class mine that we see producing silver for decades to come. Hecla and the

**COMPLAINT AND DEMAND FOR JURY TRIAL - 16**

Lucky Friday mine have faced challenges in the past and we will once again overcome them."

The Silver Shaft is a one-mile deep shaft from surface and the primary access to the Lucky Friday mine. The sand and concrete material to be removed from the shaft has built up over a number of years and is expected to be removed primarily by power washing. All other significant activities at the mine including construction of the #4 Shaft and bypass around the rock burst are on hold. Care and maintenance of the underground will be focused on the 4900 level where the #4 Shaft infrastructure is located. Production is expected to resume in early 2013.

48.     The Individual Defendants knew or should have known about the safety violations in the Lucky Friday mine and failed to take any action to safeguard their employees and avoid the liability the Company now faces as a result of these violations. As such, the Individual Defendants have breached their fiduciary duties to the Company.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

49.     Plaintiff brings this action derivatively in the right and for the benefit of Hecla to redress injuries suffered, and to be suffered, by Hecla as a direct result of the breaches of fiduciary duty by the Individual Defendants. Hecla is named as a nominal defendant solely in a derivative capacity.

50.     Plaintiffs will adequately and fairly represent the interests of Hecla in enforcing and prosecuting its rights.

51.     At the time of filing, the Board consisted of the following individuals: defendants Baker, Crumley, Bowles, Nethercutt, Rogers, Stanley, and Taylor. Plaintiffs did not make any demand on the Board to institute this action because such a demand would have been futile, wasteful and useless act, particularly for the following reasons:

COMPLAINT AND DEMAND FOR JURY TRIAL - 17

(a)     As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors; and attendance at management and the Board meetings during the Relevant Period, each of the Individual Defendants knew, or were reckless in not knowing, that the Company was failing to comply with mine health and safety regulations, yet failed to take any meaningful action to correct these problems and or inform shareholders that it was in danger of failing to meet its projected mining amounts because it would need to close its only United States silver producing mine;

(b)     Moreover, several members of the Safety Committee have decades of expertise in the mining industry. Defendants Rogers, Stanley and Taylor all have significant mining experience, thus, given their expertise in the mining industry, their failure to ensure compliance with safety regulations is indicative of their knowing, or at least reckless, disregard for their fiduciary duties;

(c)     Defendants Bowles, Crumley and Baker are members of Hecla's Executive Committee. As such, they have heightened control over, and responsibility for, the conduct of Hecla and its senior management and have greater access to critical information.   Hecla's senior management reports directly to, and serves at the behest of the Executive Committee. As such, the members of the Executive Committee have had, and continue to have, direct oversight over all of the corporate misconduct detailed herein. As members of the Executive Committee, defendants Bowles, Crumley and Baker cannot impartially investigate or take appropriate action against themselves and others responsible for the wrongdoing alleged herein;

(d)     The acts complained of herein constitute violations of fiduciary duties owned by Hecla's Board and these wrongful and unreasonable acts are incapable of ratification;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 18**

(e)     The Individual Defendants, because of their inter-related business, professional and personal relationships, have also developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein.  In addition to the conflicts that exist as a result of their participation in the flagrant disregard for mine health and safety laws, as detailed above, the majority of the Board, including the defendants listed below, are subject to the following prejudicial entanglements and transactions which compromise their independence:

- Defendant Baker is the President and CEO of Hecla and thus not independent;

- Defendant Nethercutt has significant financial ties to the Company which undermine his independence.  Nethercutt received multiple donations from the Hecla Mining Company Political Action Committee when he ran for Congress and as such is beholden to Hecla and is not independent;

- Defendants Rogers, Baker and Stanley serve together on the Board of Directors for QEP Resources, Inc., where Stanley is the CEO and President; and

- Defendants Stanley and Baker both served as members of the Board of Directors of Questar Corporation of which Defendant Stanley was also an executive officer.

(f)     Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein;

(g)     In order to bring this suit, all of the directors of Hecla would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 19**

(h)     The acts complained of constitute violations of the fiduciary duties owed by Hecla's officers and directors and these acts are incapable of ratification; and

(i)     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for Hecla for any of the wrongdoing alleged by plaintiff herein.

## COUNT I

### Against All Individual Defendants for Breach of Fiduciary Duty

52.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

53.     By reason of their fiduciary relationships, the Individual Defendants owed and owe Hecla the highest obligation of good faith, fair dealing, loyalty and due care.

54.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

55.     Each of the Individual Defendants had actual or constructive knowledge of the misconduct alleged herein, including that they had caused or allowed the Company to habitually violate mine health and safety regulations.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

56.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Hecla has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

57.     Plaintiff, on behalf of Hecla, has no adequate remedy at law.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 20**

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury composed of no less than twelve (12) persons on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

1.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

2.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Hecla has an effective remedy;

3.     Awarding to Hecla restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

4.     Awarding to plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

5.     Granting such other and further relief as the Court deems just and proper.

DATED this __29th__ day of February, 2012.

ROSSMAN LAW GROUP, PLLC

By: _____

Eric S. Rossman
Attorneys for Plaintiff

\\FILESERVER\Documents\Work\G\Gardy & Notis\Pleadings\Complaint.doc

**COMPLAINT AND DEMAND FOR JURY TRIAL - 21**